## HARBINE v HUGHES

Ohio Appeals, 2nd Dist, Montgomery Co

No 1485. Decided January 25, 1938

John T. Harbine, Jr., Xenia, for appellant.

Frank W. Krehbiel, Dayton, for appellee.

### OPINION

By THE COURT:

In order that we may correctly understand the question involved we will first

examine the chronology of the case. On June 1, 1933, a petition together with an affidavit was filed by the plaintiff seeking to replevin certain chattel property. A summons was issued and served personally on the defendant on the 2nd day of June. On the 7th, an order for delivery of personal property was issued and returned and an appraisal in replevin filed. On June 15th, an application for an order to sell was filed and the court hearing said application and finding that the cost of keeping the property would be large and that a sale thereof would be for the benefit of the parties, ordered the sheriff to sell and as upon execution at public auction for cash and to hold the proceeds.

On June 22nd, the defendant was given leave to plead by July 17. On August 5th, it appearing to the court that the defendant was in default on July 17th, the court found that the allegations of plaintiff's petition were true and that he was entitled to possession of the property and judgment entered in his favor therefor. On August 10, 1933, on motion of the plaintiff, and upon return of the sheriff, the court being satisfied that the sale is in conformity to law, it was ordered that the sale be confirmed and the proceeds thereof amounting to $163.00 distributed. $127.68 being received by the plaintiff. The bondsmen were released.

On August 14th, on motion, judgment was vacated together with the entry of confirmation and the defendant given leave to plead and thereupon filed an answer and cross petition. On August 19th, 1933, it appearing to the court that the sale of the property replevined had been approved and a distribution made, the court sustains and approves the distribution except that the bond heretofore put up by the plaintiff is not released until further order. A motion to strike parts of the cross petition was interposed on August 31, 1933, and the case apparently rested until March 27, 1936.

On August 14, 1936, defendant was given leave to file an amended answer and on January 9, 1937, the plaintiff was granted leave to file a reply, which he promptly did.

On June 2, 1937, an amended answer and cross petition was filed and on the same day the trial began. On June 3, defendant again applied to amend his answer and cross petition by inserting the words "defendant for his answer herein says the plaintiff claims he had a legal right." Objection was made to this but the court permitted the amendment providing it is in concurrence with the evidence. Rec. p. 32.

On June 3rd, after charge by the court, the jury returned the following verdict:

"We the jury upon the issues joined between the parties, in this case, do find for defendant, in the sum of two hundred and fifty-six ($256.00) dollars."

A further reply was filed by the plaintiff to defendant's answer and cross petition. Motion for new trial was filed, overruled. judgment rendered, notice of appeal on questions of law given and the case lodged in this court.

It seemed advisable to go into detail as to the chronology of the case as at a number of places in the record, counsel for defendant asserted action had been taken by the plaintiff without knowledge of defendant. If this were true, it was the fault of the defendant because it appears that the action was brought on June 1, 1933 and defendant personally served on June 2, 1933. On a number of occasions the judgment of the court was vacated in order to let the defendant plead.

We are not permitted to treat this case as having an aspect other than that which is frequently before the courts. Each party has his rights and each should be protected in' those rights. t

Numerous errors are assigned by plaintiff, to all of which we have given our consideration, but do not deem it necessary to discuss them in their entirety nor in the order in which they were presented.

### The Fund Derived From Sale

The action was one in replevin. An application was made under §12061 GC. to have the property sold as upon execution because of the cost of keeping it. §12062 GC provides that the fund arising from such sale shall take the place of the property so sold. Upon such order of sale being made, the right of election heretofore provided for shall cease as to the property sold. On three different occasions the court upon examining the sale confirmed the same and we can entertain no doubt that the sale was regularly made, and according to the statute the fund arising from such sale takes the place of the property so sold. This seems to us to remove from further consideration any question of the value of the property at the time it may have been first seized by the sheriff.

Even though the property had not been sold under the provision of §12062 GC., we

are of the opinion that unless it appears that some fraud or irregularity had been practiced by the plaintiff that the value of the property was fixed at the sale. In **Armstrong v McElkin, 18 Oh St., 184**, second syllabus, it is held that a mortgagee who rightly recovered possession by replevin of the property is not chargeable with value of the property at the time it was replevined; and where he disposed of it at private sale, if such sale was fair and reasonable, he ought to be charged with no greater amount than that for which the property sold.

It seems to us that where a sale is made by the sheriff in pursuance of this statute, which sale is confirmed by the court after careful examination, especially under the statute mentioned, that all further question as to the value of the property sold is foreclosed.

It would not be profitable to go too much in detail in reference to this controversy, but we might comment to some extent upon the evidence. The transaction between these two parties began by the giving of a promissory note for $300.00 dated April 7, 1931, providing for partial payments and for the final payment on the 7th of April, 1932. It bore 3% per month and was secured by chattel mortgage on the property in question, which was duly filed and became a lien upon the property. The note bears endorsement "Judgment entered March 11, 1932, R.L. Gowdy, Judge". It is a cognovit note. It thus appears that the note was reduced to judgment and it further appears that shortly after the filing of the replevin action, the note was returned to the defendant by mail. The reduction of the note to judgment did not invalidate the mortgage unless by some agreement between the parties. **Green v Bass 83 Oh St., 378.**

### Ownership of Property

This case, in its trial, revolved around the question as to the ownership of the property replevined by the plaintiff at the date of the sheriff's taking it into his possession. The claims of the parties are wide apart. The plaintiff claims that after the due date of the note the defendant assigned the property to him for a valid consideration and thereafter at all times he was the owner of the property. He asserts that while he had loaned $300.00 upon mortgage security and had received no payment upon the note except two separate payments of $50.00, which were not regarded as payments of the note, but for extension of time given by him to the defendant to re-purchase the property. He asserts that after having taken title to the property he gave the defendant the right to re-purchase it for the sum of $200.00 upon which he would give a further credit of the two items of $25.00, making the re-purchase price offered to the defendant, a balance of $150.00. This offer was made by him as he claims on condition that the defendant would re-purchase and pay him cash. The defendant and his wife testify, not very convincingly, that they never knew of the transfer of the property by them to Mr. Harbine and while they admitted there was a payment of money for an extension of time, they assert that it was the extension of time for the payment of the note and not an extension of the option to re-purchase the property. Both the husband and wife testify to the continued existence of the note and chattel mortgage asserting that the agreement to accept the $200.00 was in fact a reduction of the balance due upon the note. It is hard to conceive how they could maintain this position or how the jury could come to that conclusion in face of the papers which they signed and which are attached to the bill of exceptions. On the 4th day of June, 1932, the husband by his mark and the wife by her signature, signed what is captioned "Assignment of Property" reciting that in consideration of the debt which is owed to Harbine by Hughes and his wife on their note dated 7th of April, 1931, the property described in the mortgage is hereby released, sold and conveyed to the said Harbine and this release, sale and conveyance shall be complete and effective when this paper has been signed by either Vincent or his wife or both. Then follows the schedule of the property covered by the chattel mortgage and a warranty is made that it is free from liens and an agreement is made that after the paper has been signed and Harbine has taken possession of the property, the note shall be surrendered to them or either of them, or may be mailed.

There is a paper dated June 21, 1932, agreeing that there will be no charge for keeping or caring for anything for Harbine, but he may take the things when he feels like it at any time.

Signed by Highes and his wife.

On the 27th day of June, 1932, a contract was entered into, signed by plaintiff and defendant, acknowledging the payment

of $25.00 by Hughes and providing that if $175.00 more is paid on or before the 14th of July, 1932, then Harbine is to sell all the property to Hughes, assigned to him on the 4th day of June, it being agreed that Hughes, when he pays $175.00 is to take the property; that if the $175.00 is not paid before July 14th, then the $25.00 this day paid to Harbine is to be kept by Harbine to pay for the privileges granted under the contract.

On July 15th, Hughes paid Harbine another $25.00 and the option was extended to and including the 15th day of August, for the payment of the balance of the purchase price of $150.00 and it is provided that if the balance is not paid before that date, the whole $50.00 is to be kept by Harbine. This agreement was signed by Vincent and his wife and Harbine.

Again on the 27th of August, 1932, the same parties extended the time without payment of any further bonus to the 15th day of March, 1933 and agreed that if said price is not paid on said date, there will be no charges for keeping the property for another 30 days so as to give Hughes time to get it. This contract to permit Hughes to repurchase the property for $200.00 was not harsh considering that Harbine had loaned him $300.00, no part of which was repaid.

The defense interposed by Hughes is that he did not know the conditions of these instruments; that Harbine and his agents simply told them it was to extend the payment of the mortgage; that they had no knowledge that Harbine had, by such agreement, become owner of the property. We can not conceive how this is true and we do not believe from the way both husband and wife testified, that they had any idea it was true. They seem to have conceived the notion that by asserting that they were still the owners of the property mortgaged to Harbine that he, as a consequence, was not entitled to replevin the property.

Assuming that the position of Hughes was true, Harbine then would be a mortgagee of the property with conditions broken and as such would be entitled to replevin the property at the time he did, although, of course, he would then replevin it as a mortgagee and not as an owner. O. Jur., Volume 7, page 224 lays down the principles as now prevalent in Ohio that the interest of the mortgagee is that of general owner of the property mortgaged and as such the legal title is transferred to the mortgagee whose interest in the property is limited to the debt. "As a right of general ownership, the mortgagee is entitled to possession and control of the mortgaged property unless * * * ".

"After condition broken, the mortgagee under a chattel mortgage, is the owner of the property covered by the mortgage, and the mortgagor has only a right of redemption." **Machine Co. v Supply Co., 68 Oh St., 535.**

"The interest of a mortgagee under a chattel mortgage is that of a general owner of the property mortgaged; and where there is no reservation of the right to the possession in the mortgagor, the mortgagee is entitled to the possession." **Robinson v Fitch, 26 Oh St., 659.**

Numerous other cases may be found supporting this position.

Whether Harbine claimed the property by virtue of its transfer to him or under a chattel mortgage with conditions broken, he had a right to its possession at the date it was seized by the sheriff.

It appears in evidence that the defendants were seeking a loan from some Federal Farm Institution in Columbus in order to discharge the debt to Harbine and they assert they were about to secure the loan when Harbine wrote stating he owned the property on account of which statement the loan fell through. Whether this be true or not true, it does not effect the title of Harbine either under his mortgage or assignment.

#### General Charge of the Court

We have examined the charge of the court and are frankly somewhat at a loss as to the meaning of certain charges, for instance, in reference to preponderance of the evidence. On page 60 it is stated:

"The burden of proof is upon the plaintiff to make out the essential elements of his petition by a preponderance of the evidence; likewise the burden is upon the defendant to make out each and every essential element of his cross petition by a preponderance of the evidence. This evidence must be clear and convincing.

By preponderance of the evidence we mean the weight of the evidence. By weight of the evidence we mean that evidence which is more convincing and more satisfying to your mind."

We do not understand that a preponderance of the evidence must be either convincing or satisfying and ██ clearly "preponderance of the evidence" does not contemplate evidence that is clear and convincing. R.R. Co. v Frye 80 Oh St., 289-303; R.R. Co. v Linn 77 Oh St., 615; Merrick v Ditzler 91 Oh St., 256.

Another matter that might be subject to criticism is that after the court had properly stated to the jury that this is an action in replevin brought by the plaintiff against the defendant to recover the possession of certain chattels which the plaintiff claims he is the owner of and has been wrongfully detained by the defendant he stated:

"Members of the jury you will have three forms of verdict submitted to you, when you arrive at the verdict, you will carefully examine the forms of verdict submitted to you and fill out the blank submitted to you in the proper form of verdict. These forms of verdict will be submitted to you for your convenience. It is not necessary for you to use them if you find they are not applicable to your verdict at which you arrive."

Three forms were then given, the last was the one used by the jury:

"We the jury, upon the issues joined between the parties in this case, do find for the defendant in the sum of $25.00."

Sec 12069 GC. provides in substance that when the property is delivered to the plaintiff or remains in the hands of the sheriff, if upon issues joined, the jury finds for the defendant, they also shall find whether he had the right of property or the right of possession only at the commencement of the suit. ██ If they find either in his favor they shall assess to him such damages as they think are proper for which with costs of the suit, the court shall render judgment in his favor.

"Action in replevin * * * It is error for the court to find for the defendant and assess his damages without first finding whether at the beginning of the action the right of property or the right of possession only was in the defendant and this finding must be carried into the judgment entry." Supply Co. v Banking Co., 18 C. C.N.S., 603. Simper v White O.C.C. Rep. Vol. 7, 303.

## CONCLUSION

We conclude that we must reverse the judgment below for a number of reasons, all of which we do not feel it necessary to mention, but among which we might cite first, the introduction of evidence tending to prove the value of the property as much in excess of that for which it was sold at sheriff's sale; error in failing to submit to the jury the proper form of verdict; errors in the general charge and lastly that the verdict of the jury is manifestly against the evidence and seems to have been rendered under the influence of prejudice.

There are many other errors asserted by plaintiff, some of which commend themselves to us, but it is not necessary to pass upon them.

Upon the facts adduced by the plaintiff in this cause, he was, at the time of institution of the action, the owner of and entitled to the possession of the property described in the replevin action and upon the testimony in behalf of the defendant he was the mortgagee of said property and the condition of the mortgage had been broken at the time of the institution of the replevin action. In either situation the plaintiff had full right to maintain the action in replevin. The defendant could not establish a higher value of the property than the sum produced at the sale. Thus there was no other verdict or judgment responsive to the issues under the law, save that in favor of the plaintiff.

The judgment should therefore be entered for the plaintiff and the cause will be remanded to the trial court accordingly.

BARNES, PJ., HORNBECK and GEIGER, JJ. concur.